# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **PETER CURTIS MILLARD**, | Case No. 2:12-cv-01244-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **OREGON DEPARTMENT OF CORRECTIONS**, a public entity, **MICHAEL F. GOWER**, Assistant Director, **STEVE SHELTON, M.D.**, Medical Director, **CAPTAIN LARRY LYTLE**, O.I.C., **CAPTAIN JAIME HERRERA,** O.I.C., **SARGENT DOUGLAS BARE**, Correctional Officer, **OFFICER SKY MITCHELL**, Correctional Officer, **SHARON MARIE SMITH, R.N.**, and **STACI ROBERTS, R.N.**, all in their individual capacities, | |
| Defendants. | |

Peter Curtis Millard, #12061124, Two Rivers Correctional Institution, 82911 Beach Access Road, Umatilla, OR 97882-9419, *pro se*.

Ellen F. Rosenblum, Attorney General, Robert E. Sullivan, Senior Assistant Attorney General, Oregon Department of Justice, 1162 Court Street N.E., Salem, OR 97301-4096. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

The Eighth Amendment of the U.S. Constitution provides a fundamental and essential protection for the incarcerated. Not every unpleasantry that occurs while a prisoner is incarcerated, however, rises to a violation of that constitutional provision. It is with this principle

in mind that the Court evaluates this case. Plaintiff Peter Curtis Millard ("Millard" or "Plaintiff") is an inmate in the custody of the Oregon Department of Corrections ("ODC"). He is housed at the Two Rivers Correctional Institution ("TRCI") in Umatilla, Oregon. In this federal civil rights action brought under 42 U.S.C. § 1983, Millard alleges that Defendants ODC, Assistant Direct Michael F. Gower, Medical Director Steve Shelton, Captain Larry Lytle, Captain Jaime Herrera, Sargent Douglas Bare, Officer Sky Mitchell, Registered Nurse Sharon Smith, and Registered Nurse Staci Roberts (collectively "Defendants") violated Millard's rights under the Eighth and Fourteenth Amendments of the U.S. Constitution and Oregon law. Defendants now move for summary judgment. Dkt. 61. For the reasons that follow, the Court grants Defendants' motion.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

A court must liberally construe the filings of a *pro se* plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A court must "consider as evidence in [a *pro se* plaintiff's] opposition to summary judgment all of [the plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004).

## BACKGROUND

On Saturday, February 5, 2011, between approximately 2:30 p.m. and 3:00 p.m., Millard injured his left thumb during a basketball game. After showering, Millard approached Defendant Mitchell, a supervisor in the unit where Millard is housed at the TRCI, and asked for a bag of ice. The exact words used by Millard and Mitchell during this exchange are contested. Millard explains that Defendant Mitchell asked Millard why he hurt his hand, and Millard explained that he "hurt his hand playing basketball." Mitchell Decl., Dkt. 63 at ¶ 6. Millard alleges that he complained to Mitchell about "the increasing pain and swelling in [Millard's] thumb." Millard Decl., Dkt. 84 at ¶ 5. Millard also states that when Mitchell asked Millard how he continued to play basketball after he injured his thumb, he responded that he "initially didn't suspect the injury to be serious, until the pain and swelling increased." *Id.* Millard alleges that before Mitchell contacted Health Services, he told Millard that he was "not going to get any sympathy" from Mitchell. *Id.* at ¶ 10. According to Millard, after Mitchell informed TRCI Health Services of Millard's injury, Mitchell told Millard that "[Millard] was not authorized any ice for [his] thumb" and that he would need to sign up for sick call for the morning of Monday, February 7, 2011. *Id.* at ¶ 11.

Later in the evening of February 5, 2011, the pain and swelling in Millard's thumb intensified and his thumb began to discolor. Millard contends that Mitchell noticed the increased swelling and notified Health Services of Millard's condition. The nursing staff at Health Services authorized Millard ice for his hand and ibuprofen from the housing unit supply. Mitchell brought Millard a plastic bag for ice and again told Millard that he would need to sign up for sick call on February 7, 2011. Millard's pain continued throughout that night.

On February 6, 2011, Millard approached Defendant Bare regarding Millard's injury. Millard showed his bruised and swollen thumb to Defendant Bare. Defendant Bare stated that he was aware of Millard's injury and that Defendant Bare could not override Health Services' decision not to see Millard. Millard continued to insist that his thumb should be evaluated to see if it was in fact broken, which Millard explained would mean the thumb would need to be immobilized to prevent further injury. Millard informed Defendant Bare that Millard was aware of his right to adequate medical care. Millard contends that Defendant Bare was "bellicose towards [Millard] and threatened, 'I could have your ass thrown in the hole for extortion for saying that, and if you so much as utter the word 'lawsuit' again, I'll do just that.'" Millard Decl., Dkt. 84 at ¶ 22. Defendant Bare, after being approached by Millard for a second time, contacted Health Services. Defendant Bare told Millard that Health Services was refusing to see him and that he needed to sign up for sick call.

Millard showed his thumb injury to Officer Carter later in the day on February 6, 2011. Officer Carter, after seeing Millard's "swollen, discolored thumb" called Health Services to get Millard immediate medical attention. Millard Decl., Dkt. 84 at ¶¶ 28-30. Records from Health Services indicate that Health Services nursing staff saw Millard at 3:37 p.m. The examining nurse observed "bruising and edema in the left thumb from the tip of the thumb to the first

joint . . . and some bruising extending into the palm." Shelton Decl., Dkt. 64 at ¶ 5. The

consulting medical provider, Defendant Lytle, ordered a splint for Millard's left thumb and ice

for 24 hours. Millard was also told to elevate his hand, complete no work for 24 hours, and

Defendant Lytle prescribed Vicodin for 24 hours. Health Services staff applied a splint to

Millard's thumb and Millard received the prescribed medication. Millard states that Health

Services staff chose not to take him to the local hospital for x-rays and a thumb spike and,

instead, elected to wait until the next day when an x-ray technician would be available.

On Monday, February 7, 2011, Millard reported to sick call and asked when he would

receive an x-ray of his left thumb and if he was going to get more Vicodin. Health Services

completed x-rays of Millard's thumb and told Millard it may take a week to receive the

radiologist's report. The nurse at Health Services (either Defendant Roberts or Defendant Smith)

told Millard that Defendant Lytle wanted to await the x-ray results before prescribing additional

Vicodin.

On February 16, 2011, Millard received the Test Results Communication regarding his

February 7, 2011 x-ray. The report stated that "[t]here is [a] questionable, nondisplaced fracture

involving the base of the distal phalanx. This is seen on the oblique view and represents change

from the previous study." Shelton Decl. Attach. 1, Dkt. 64 at 38. The radiologist's impression

was: "Questionable nondisplaced fracture of the base of the distal phalanx." *Id.* Millard's

previous x-ray of his left thumb was from April 14, 2010, which showed "no evidence of recent

fracture or other significant bon[e] abnormality." *Id.* at 36. Millard sent an inmate

communication to Health Services requesting pain medication and to see a physician. Millard

also filed a grievance against Defendants Roberts and Smith alleging that they were deliberately

indifferent to a serious medical need and again requested pain medication. Defendant Shelton

explained that "[n]o change of treatment was indicated" on February 16, 2011. Shelton Decl., Dkt. 64 at ¶ 6.

On February 18, 2011, Millard reported to sick call regarding pain in his thumb. Millard told the nurse staff that the ibuprofen prescribed was not helping his pain and that he needed something stronger. Millard was scheduled to see a provider on February 22, 2011. The nurse authorized Millard to have ice two times a day for one more week and instructed Millard to elevate his left hand. *Id.* at ¶ 7. Defendant Shelton explained that "[i]ce is available to inmates on their housing units." *Id.*

Millard met with Defendant Lytle for the first time on February 22, 2011. Millard contends that after informing Defendant Lytle of Millard's pain, and contrary to the "radiologist's report that indicated a questionable non-displaced fracture," Defendant Lytle "would not consent to treat [Millard's] pain." Millard Decl., Dkt. 84 at ¶ 42. Defendant Shelton explained that Millard "was seen by a physician who instructed [Millard] to continue to wear the splint for four more weeks and increase his range of motion exercises of the left thumb. He ordered no basketball for two months and ordered follow-up x-rays in four weeks." Shelton Decl., Dkt. 64 at ¶ 8.

On March 2, 2011, Millard reported to sick call explaining that his "rom [range of motion] is limited [in his thumb and] it still hurts." Shelton Decl. Attach. 1, Dkt. 64 at 9. The treating nurse, Defendant Smith, documented that Millard had a splint on his left thumb and an ace wrap around his thumb and part of his hand. *Id.* Defendant Smith did not document any swelling or bruising. *Id.* On March 3, 2011, Millard sent a letter to ODC's Health Services' Administrator, Defendant Shelton, notifying him of the deliberate indifference Millard alleged he suffered and requesting that the ODC employees treat his injuries.

Millard reported to sick call on March 9, 2011 asking when his next x-ray would be scheduled and reporting a decreased range of motion in his left thumb. Shelton Decl., Dkt. 64 at ¶ 10. Millard was not wearing a splint at that meeting and told Health Services staff that he could not wear the splint and do his exercises. *Id.* On March 10, 2011, Health Services administered a second set of x-rays for Millard's thumb injury.

Millard met with Defendant Lytle for a follow-up exam on March 14, 2011. Millard alleges that despite his comments regarding his continued pain and stiffness in his thumb, Defendant Lytle discontinued the splint and ACE wrap and encouraged Millard to increase his range of motion exercises. Millard Decl., Dkt. 84 at ¶ 49. On March 15, 2011, Millard received the second set of x-rays of his left thumb, which stated: "There is a fracture of the base of the distal phalanx that is nondisplaced. This is unchanged in position or alignment when compared to earlier films." Millard Decl. Attach. 7, Dkt. 84-2 at 25.[1]

On March 25, 2011, Housing Services received a call from a housing unit officer reporting that Millard hurt his leg playing basketball.[2] Shelton Decl., Dkt. 64 at ¶ 13. Millard reported to the nurse that Millard "went to push off and felt something 'rip or tear' in [his] calf" and that he had "never felt like this before something is really wrong." *Id.*; Shelton Decl. Attach. 1, Dkt. 64 at 11. Millard was ordered to ice and elevate his left calf, take 800 milligrams of ibuprofen as directed, and not to engage in sports for three weeks. *Id.* at 22. There was no mention at this visit of Millard's thumb injury.

---

[1] Defendants state that Millard received the second set of x-ray exam results on March 10, 2011. For the purposes of this motion, the Court accepts the facts alleged by Millard. *See* Shelton Decl., Dkt. 64 at 39.

[2] Millard's participation in basketball on March 25, 2011 was in violation of the two-month bar ordered by Defendant Lytle on February 22, 2011 after he examined Millard. *See* Shelton Decl., Dkt. 64 at ¶ 8.

On April 1, 2011, Defendant Shelton responded to Millard's letter alleging deliberate indifference to his serious medical needs by Defendant Shelton's subordinate personnel. Defendant Shelton did not state he was taking "any corrective measures to abate future risks of harm." Millard Decl., Dkt. 84 at ¶ 54. Millard also spoke with Defendant Lytle on April 1, 2011 regarding Millard's claims of deliberate indifference to his medical needs. Defendant Lytle informed Millard that he would not report any of the criminal claims alleged by Millard to the Oregon State Police and that Millard was taking the appropriate steps by filing grievances regarding the incident. Throughout April of 2011, Millard filed and received responses to several other grievances he had against individuals at the TRCI in relation to his thumb injury. *Id.* at ¶¶ 58-68.

On April 4, 2011, Millard reported to sick call complaining of continued pain in his thumb. *Id.* at ¶ 59. Millard also complained of pain in his left calf that he stated he hurt while running the past Sunday. Shelton Decl., Dkt. 64 at ¶ 14. Millard reported to sick call on April 11, April 12, and April 15, 2011 with complaints related to his left calf pain. *Id.* at ¶ 15. There is no documentation of Millard complaining or expressing concerns about his thumb at those sessions. Health Services placed Millard on two months sports restriction. *Id.* On April 19, 2011, Millard was seen by a medical provider related to Millard's left calf pain. *Id.* at ¶ 16. Millard did report stiffness in his left thumb, but the provider did not document reports of thumb pain. *Id.*

A medical provider saw Millard on May 9, 2011 regarding his left thumb injury. *Id.* at ¶ 17. At that meeting, Millard reported that the range of motion for his left thumb was slightly less than his right thumb but did not report pain or discomfort. He was instructed to not lift weights if that hurt his thumb. *Id.* On June 8, 2011, Millard refused a follow-up appointment to evaluate his left thumb. *Id.* at ¶ 18. From May 2011 through October 2011, Millard continued to

report grievances against Defendants and filed a Tort Claim Notice to the Oregon Department of

Administrative Services. Ultimately, ODC and the Department of Administrative Services

denied Millard's grievances and claims.

## DISCUSSION

"Section 1983 creates a private right of action against individuals who, acting under color

of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d

1070, 1074 (9th Cir. 2001). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two

essential elements: (1) that a right secured by the Constitution or laws of the United States was

violated; and (2) that the alleged violation was committed by a person acting under the color of

state law. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Section 1983 "is

not itself a source of substantive rights, but merely provides a method for vindicating federal

rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (citation and

quotation marks omitted).

Millard's *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 alleges violations of

the Eighth and Fourteenth Amendments of the U.S. Constitution, the Oregon Constitution, and

Oregon statutory law. Defendants move for summary judgment on all grounds and argue that

Defendants are entitled to qualified immunity from damages.

## A.  Inadequate Medical Care Claims

Millard, who was a convicted inmate at all relevant times, alleges that he received

inadequate medical care while in the custody of the ODC and that this violated his Eighth

Amendment rights and his substantive due process rights under the Fourteenth Amendment.[3]

---

[3] Millard's invocation of his substantive due process rights under the Fourteenth
Amendment in relation to the denial of medical care is subject to review under the Eighth
Amendment. *See Pefley v. Gower*, 2013 WL 140036, at *3-4 (D. Or. Jan. 10, 2013) (noting that
the "due-process analysis under the Fourteenth Amendment applies only to claims for failure to

### 1. Legal Standards

The government has an obligation "to provide medical care to those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Deliberate indifference to serious medical needs constitutes unnecessary and wanton infliction of pain, which is proscribed by the Eighth Amendment. *Id.* at 104. In this context, however, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106. In order to state a claim relating to medical care under § 1983, a prisoner must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* Allegations that a medical professional was negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. *Id.*

To establish an Eighth Amendment violation under § 1983, a prisoner must satisfy "both the objective and subjective components of a two-part test." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)). First, the plaintiff must show "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle*, 429 U.S. at 104). Second, he must demonstrate that the prison official "acted with deliberate indifference in doing

provide adequate medical care to pretrial detainees" (citing *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010) and *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014)). The Supreme Court has explained that "[i]f a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1988) (citation and quotation marks omitted). The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (citation and quotation marks omitted). This principle "establish[es] the government's obligation to provide medical care for those whom it is punishing by incarceration." *Id.* Therefore, this Court analyzes Millard's inadequate medical care claim under the Eighth Amendment of the U.S. Constitution.

so." *Toguchi*, 391 F.3d at 1057 (citation and quotation marks omitted). Under this standard, for example, a medical decision declining to order an x-ray ordinarily does not represent cruel and unusual punishment but is a matter for medical judgment. *Estelle*, 429 U.S. at 107.

Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Jett*, 439 F.3d at 1096 (citation and quotation marks omitted). A "claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Therefore, a defendant is liable if he knows that a plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* at 842. For example, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

## 2. Analysis

Millard contends that he received inadequate medical care from Defendants. Specifically, Millard alleges that Defendants Mitchell and Bare, the officers who initially responded to his thumb injury, and Defendants Lytle, Smith, and Roberts, all staff members at the TRCI Health Services, were deliberately indifferent to his serious medical needs. Millard contends that Defendant Shelton and Defendant Herrera, as individuals in supervisory positions, were deliberately indifferent to Millard's serious medical needs. Defendants argue that they are entitled to summary judgment on Millard's Eighth Amendment claim because his fractured

thumb did not constitute a serious medical need and, even if it did, Defendants were not deliberately indifferent toward Millard.

### a. Serious Medical Need

Defendants' argument that Millard's nondisplaced fracture in his left thumb does not constitute a serious medical need is without merit.[4] "[A] serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Lolli v. Cnty. of Orange*, 351 F.3d 410, 419 (9th Cir. 2003) (citation and quotation marks omitted). It is well established that pain from a broken bone constitutes a serious injury. *See, e.g.*, *Jett*, 439 F.3d at 1096 n.1 (noting that it was "undisputed that [the plaintiff's] fractured thumb was a serious medical need"); *Loe v. Armistead*, 582 F.2d 1291, 1292-96 (4th Cir. 1978) (reasoning that a "broken arm can be an excruciating injury" and constituted a "serious medical need"). Millard's declaration establishes that he was in serious pain from a nondisplaced thumb fracture. These allegations are sufficient to create a genuine dispute on whether Millard had a serious medical need.

### b. Deliberate Indifference Regarding Defendants Mitchell and Bare

Defendants argue that that the actions of Defendants Mitchell and Bare on February 5 and 6, 2011 do not establish deliberate indifference. Millard must show that Defendants' response to his serious medical need was deliberately indifferent by establishing "(a) a purposeful act or failure to respond to [the] prisoner's pain or possible medical need and (b) harm caused by the

---

[4] The Court notes that Defendants' brief on this issue cites to facts that are not at issue in this case. Counsel's opening sentence reads: "Plaintiff cannot establish that defendants' decision to deny him facial reconstructive surgery could result in further significant injury or the unnecessary and wanton infliction of pain." Defs.' Mem., Dkt. 62 at 8. Nowhere in Millard's complaint or briefing to this Court does he mention an Eighth Amendment claim based on a denial of facial reconstructive surgery. The Court finds that this portion of Defendants' brief incoherent.

indifference." *Jett*, 439 F.3d at 1096. In the present case, viewing the record in the light most favorable to the non-moving party Millard, there is insufficient evidence to allow a reasonable jury to conclude that Defendants Mitchell or Bare acted with deliberate indifference. The Court analyzes each Defendant in turn.

First, on February 5, 2011, Defendant Mitchell, after getting the necessary background information regarding Millard's thumb injury, contacted Health Services. Health Services determined initially that Millard's injury should be addressed at sick call on Monday, February 7, 2011. After Millard expressed concern regarding his thumb, increased swelling, and discoloration, Defendant Mitchell contacted Health Services for a second time. Health Services authorized a bag of ice for Millard's thumb and again determined that his thumb should be evaluated at sick call. Defendant Mitchell is not a doctor or nurse and is not otherwise medically trained. Mitchell Decl., Dkt. 63 at ¶ 7. Moreover, Defendant Mitchell "cannot prescribe a bag of ice without Health Services staff approval." *Id.* As such, Mitchell was entitled to rely on the medical opinions of the Health Services staff so long as a reasonable person would not have determined that the treatment of Millard was unreasonable. *See Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992) (holding that "choosing to rely upon a medical opinion which a reasonable person would likely determine to be inferior" and forcing the plaintiff to fly with an ear injury against doctor's orders "may have amounted to the denial of medical treatment" and could have constituted deliberate indifference), *overruled in part on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001); *see also McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel may rely on medical opinions of health care professionals unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner" (quotation marks omitted)).

Defendant Mitchell observed Millard continuing to play basketball with his thumb injury and observed the thumb injury before it had discolored and swollen to the extent observed by Officer Carter. Millard fails to provide evidence sufficient for a reasonable jury to find that Defendant Mitchell should have known that Millard was not receiving appropriate treatment. *See Caplinger v. CCA*, --- F. Supp. 2d ---, 2014 WL 556451, at *11 (D. Idaho Feb. 11, 2014).

Second, Defendant Bare also was not deliberately indifferent in attending to Millard's thumb injury. Defendant Bare was aware of Millard's injury and Health Services' referral of Millard to the Monday, February 7, 2011 sick call. *See* Mitchell Decl. Attach. 2, Dkt. 63 at 6 (noting in the Post Information Log Defendant Mitchell's knowledge of Millard's injury for reference by other staff). After Millard showed his thumb injury to Defendant Bare, Defendant Bare independently consulted with Health Services. Assuming that Defendant Bare was indeed "bellicose" towards Millard, he still consulted with Health Services and followed Health Services' directive. As noted above, given the context of Millard's injury, it was not unreasonable for Defendant Bare to follow Health Services directives. *See Hamilton*, 981 F.2d at 1067. This is particularly true because Millard concedes that his thumb injury worsened throughout the day on February 6, 2011. Therefore, Officer Carter's update to Health Services was based on a symptoms and conditions that had changed since Defendant Bare's involvement. The Court finds that Millard has not created genuine dispute of material fact that Defendant Bare was deliberately indifferent to Millard's medical needs.

### c. Deliberate Indifference Regarding Defendants Lytle, Smith, and Roberts

Millard argues that the decisions of Defendants Smith and Roberts to recommend sick call on Monday, February 7, 2011, rather than treating Millard's thumb on Saturday, February 5, 2011, demonstrate that they were deliberately indifferent. Millard also contends that Defendants

Lytle, Smith, and Roberts failed to treat his pain after Millard complained that the ibuprofen Health Services prescribed was not sufficient.

First, regarding Defendants Smith and Roberts' recommendation for sick call, the Court finds there is insufficient evidence to create a genuine dispute of material fact regarding deliberate indifference. Although Millard may not have agreed with Defendants Smith's or Roberts' decision to recommend sick call, a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment does not raise a claim under 42 U.S.C. § 1983. *See Toguchi*, 391 F.3d at 1058; *see also Snow*, 681 F.3d at 987 ("A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference."). Instead, Millard must "show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (quotation marks omitted) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

In this case, Millard contends he should have immediately received an x-ray for his thumb. Millard's contention does not establish deliberate indifference. For example, in *Estelle*, the Supreme Court rejected a prisoner's Eighth Amendment claim that prison doctors should have done further diagnosis and treatment for a back injury. 429 U.S. at 107. The Court reasoned that "the question whether an x-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment" and "does not represent cruel and unusual punishment." *Id.* Defendants Smith and Roberts' choice to wait until the next day to x-ray Millard's thumb injury is a classic example of acceptable medical judgment. As a result,

PAGE 15 – OPINION AND ORDER

the same analysis from *Estelle* is applicable to Millard's claims against Defendants Smith and Roberts.

Second, Millard also argues that the denial of his request for different pain medication by Defendants Lytle, Smith, and Roberts demonstrates deliberate indifference. Millard, however, was provided with Vicodin for limited periods of time and non-narcotic pain medications (ibuprofen) at other times to treat his pain. Millard's request for narcotics in the circumstances of this case was not medically necessary. *See, e.g.*, *Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998) (alleged delays in administering pain medication, without more, do not constitute deliberate indifference); *see also Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) (per curiam) (one-day delay in receiving medication did not constitute deliberate indifference when there was no evidence "these minor delays caused any harm"); *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990) (alleged delay of several days in receiving pain medication did not amount to a constitutional violation); *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990) (repeatedly failing to satisfy requests for aspirins and antacids to alleviate headaches, nausea and pains is not constitutional violation; isolated occurrences of neglect may constitute grounds for medical malpractice but do not rise to level of unnecessary and wanton infliction of pain).

Jail officials have broad discretion to determine medical care, and an inmate is not entitled to the treatment he wants. *Tolbert v. Eyman*, 434 F.2d 625, 626 (9th Cir. 1970). Differing treatment options are at the discretion of the medical professionals and even if the decisions relating to Millard's pain medication were medically erroneous (which is not clear from the record), they cannot be characterized as a disregard for an excessive risk of inmate health. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (failure to provide local anesthetic for pain does not suffice for an Eighth Amendment claim); *see also Estelle*, 429 U.S. at 107. At most,

PAGE 16 – OPINION AND ORDER

Millard's Eighth Amendment claim that he should have received Vicodin immediately after his injury and after his first 24-hour prescription expired amounts to medical negligence. Negligent treatment, however, does not support an Eighth Amendment claim. *Estelle*, 429 U.S. at 106-07. Millard fails to raise a genuine issue of material fact that he had been treated with deliberate indifference to a serious medical need with respect to his pain medication. Therefore, the Court grants Defendants' motion for summary judgment on the Eighth Amendment claims against Defendants Lytle, Smith, and Roberts.

### d. Deliberate Indifference Regarding Defendants Shelton, Herrera, and Gower

Millard contends that Defendants Shelton, Herrera, and Gower were "made aware of the acts and/or omissions of their counterparts . . . but were deliberately indifferent to [Millard's] requests for help after he alerted them that he faced a substantial risk of serious harm." Pl.'s Mem., Dkt. 85 at 18. Defendants argue that Millard failed to establish that each individually-named Defendant acted with a culpable state of mind and thus they are entitled to summary judgment on Millard's claim.[5] "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

The supervisor's "personal participation" may include his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the

---

[5] Counsel for Defendants does not distinguish between Defendants' varying roles in this case, for example, that Defendants Shelton, Herrera, and Gower were supervisors of other individually-named defendants. Moreover, Defendants also fail to distinguish between the relevant legal standard to establish deliberate indifference for Defendants acting in supervisory roles. As a result, the Court's reasoning is without the benefit of Defendants' briefing.

constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, quotation marks, and alterations omitted). A "sufficient causal connection" exists if the supervisor "implement[ed] a policy so deficient that the policy 'itself is a repudiation of constitutional rights.'" *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1454-55 (9th Cir. 1991) (citations omitted). However, a supervisor's "general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Id.* at 1455 (citation omitted).

Following the Supreme Court decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a supervisor's culpability is also limited by his or her intent, for "each Government official . . . is only liable for his or her own misconduct." *Id.* at 677. "For an official to be liable for another actor's depriving a third party of his constitutional rights, that official must have at least the same level of intent as would be required if the official were directly to deprive the third party of his constitutional rights." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 916 (9th Cir. 2012); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (finding that a supervisor is liable for constitutional violations of subordinates only if he "participated in or directed the violations, or knew of the violations and failed to act to prevent them").

Millard argues that he filed grievances regarding the allegedly delayed medical treatment he received on February 5 and 6, 2011, and therefore Defendants Shelton, Herrera, and Gower were deliberately indifferent towards his serious medical needs and did not remedy or prevent further violations of his constitutional rights. Millard's claim fails, however, because the Court has found no underlying constitutional violation. *See Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Moreover, Defendants Shelton, Herrera, and Gower were not involved in the

decision-making process used by Defendants Smith and Roberts for the administration of Millard's medical care. *See Toguchi*, 391 F.3d at 1057-58 (finding that a prison official is deliberately indifferent only if he or she knows of and disregards an excessive risk to an inmate's health); *Starr*, 652 F.3d at 1207-08 ("The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or should have known would cause others to inflict a constitutional injury." (citation, quotation marks, and internal alterations omitted)).

With respect to Millard's claims related to the failure to provide an immediate x-ray, the nurses in Health Services that were apprised of Millard's condition determined that evaluating his thumb injury could wait and did not require an immediate x-ray and, instead, could wait until the next business day. Defendants Shelton, Herrera, and Gower had no role in this initial assessment of Millard's condition. Moreover, Defendants Shelton, Herrera, and Gower did not have control over the decision to x-ray Millard's thumb that would establish the requisite intent for deliberate indifference. *Cf. Snow*, 681 F.3d at 989.

There is also no evidence that Millard's grievances showed Defendants Shelton, Herrera, and Gower that Millard faced an excessive risk to his health related to either a delay in providing a second x-ray or in providing additional Vicodin. Moreover, there is no evidence that Defendants were aware of any physical risks, potential or manifest, caused by Health Services' decision not to provide Millard with an x-ray. Millard filed grievances with these Defendants well after he had received his fist x-ray and was receiving medical treatment for his thumb injury consistent with the results of that x-ray. *See Toguchi*, 391 F.3d at 1057-58. Further, to the extent Millard disagreed with that course of treatment, his claim at most amounts to negligence and that he needed more aggressive treatment. An allegation of negligent treatment, however, does not

support an Eighth Amendment claim. *Estelle*, 429 U.S. at 106-07. Therefore, the Court grants Defendants' motion for summary judgment on the Eighth Amendment claims against Defendants Shelton, Herrera, and Gower.

## B. Oregon Constitutional Claims

Millard alleges that Defendants Smith, Roberts, Mitchell, and Bare violated Article I, section 13 of the Oregon Constitution. Pl.'s Compl., Dkt. 4 at 25. Millard seeks a declaration that the acts of these Defendants violated Millard's rights and that he is entitled to compensatory damages, punitive damages, and legal costs. *Id.* at 29. The basis of Millard's claim appears to be that Defendants' failure to provide timely and adequate medical care constituted deliberate indifference to Millard's serious medical needs. Defendants argue that there is no factual support for Millard's claims and that Defendants are therefore entitled to summary judgment.[6]

Article I, section 13 of the Oregon Constitution provides that "[n]o person arrested, or confined in jail, shall be treated with unnecessary rigor." Damages for "deprivations of Oregon constitutional rights can be sustained only if [a plaintiff] can make [a] claim under an extant common-law, equitable, or statutory theory that provides nominal damages as a remedy" and cannot be based solely on a provision under the Oregon constitution. *Barcik v. Kubiaczyk*, 321 Or. 174, 190-91 (1995) (en banc); *see Hunter v. City of Eugene*, 309 Or. 298, 304 (1990). The "appropriate remedy for constitutional violations by public bodies, officers, employees and agents is the Oregon Tort Claims Act, [O.R.S.] 30.260-30.300." *Juran v. Independence Or. Cent. Sch. Dist.*, 898 F. Supp. 728, 730 (D. Or. 1995). Millard failed to plead his state constitutional claim under the Oregon Tort Claims Act and thus may not bring such a claim in federal court

---

[6] Defendants provide a six-line paragraph to the Court to support summary judgment on all claims related to the Oregon Constitution and Oregon statutes. The Court notes that the relevant legal standards were not provided to the Court and that such cursory briefing is not helpful to the Court.

unless the State of Oregon waives sovereign immunity under the Eleventh Amendment of the

U.S. Constitution.[7] *See Singh v. Franke*, 2013 WL 4498823, at *2-3 (D. Or. Aug. 16, 2013);

*Estate of Pond v. Oregon*, 322 F. Supp. 2d 1161, 1165 (D. Or. 2004). As a result, Millard may

not seek compensatory or punitive damages and is instead limited to existing common-law,

equitable, and statutory remedies. *See Barcik*, 321 Or. at 190-91.

Regarding Millard's claim for equitable relief under Article I, section 13, in order to

establish that a particular practice offends this provision of the Oregon Constitution, an inmate

must show that the practice "would be recognized as an abuse to the extent that it cannot be

justified by necessity." *Sterling v. Cupp*, 290 Or. 611, 620 (1981). "Practices such as

nonemergency bodily searches conducted by opposite-sex guards, and ongoing and periodical

assaults, have been held to be unconstitutional under that standard." *Smith v. Dep't of Corr.*, 219

Or. App. 192, 198 (2008) (citations and quotation marks omitted).

Pursuant to this standard, the practices that Millard challenges do not appear to have

subjected him to unnecessary rigor. On February 5, 2011, Defendant Mitchell learned that

Millard injured his thumb playing basketball and continued to play basketball after his injury.

Millard Decl., Dkt. 84 at ¶¶ 7-11. Defendant Mitchell called Health Services. *Id.* Millard alleges

that Defendant Mitchell told Millard "that only Health Services could authorize [a bag of ice],"

and that Health Services did not authorize any ice for Millard's thumb. *Id.* at ¶¶ 7-11. When

Millard spoke with Defendant Mitchell for a second time, after Millard's thumb "began to

discolor," Mitchell again called Health Services and was permitted to prescribe Millard with a

---

[7] Although Millard pleads claims under 42 U.S.C. § 1983, "state law violations do not, on their own, give rise to liability under section 1983." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 (9th Cir. 1998); *see Canell v. Or. Dep't of Justice*, 811 F.Supp. 546, 550 (D. Or. 1993) (reasoning that "only violations of the federal constitution or federal law are cognizable under 42 U.S.C. § 1983, not state law violations").

bag of ice for his hand. Mitchell Decl., Dkt. 63 at ¶ 10; Millard Decl., Dkt. 84 at ¶¶ 12-15. Health

Services again informed Mitchell that Millard should sign up for sick call on Monday. *Id.* Based

on these facts, Defendant Mitchell assessed the information provided to him, fully disclosed the

information to Health Services, and followed the instructions from Health Services. Thus,

Defendant Mitchell's actions do not amount to an "abuse" in violation of Article I, section 13 of

the Oregon Constitution. *See Sterling*, 290 Or. at 620.

Regarding Defendant Bare, Millard informed Defendant Bare of Millard's "swollen and

bruised thumb" at 12:15 p.m on February 6, 2011. Millard Decl., Dkt. 84 at ¶¶ 17-23. Millard

told Defendant Bare that he was in "a lot of pain, believed [his] thumb to be broken, and that it

required immediate medical attention." *Id.* at ¶ 18. Defendant Bare was aware of Millard's injury

and informed Millard that Defendant Bare could not override the decision of Health Services. *Id.*

at ¶ 19. An hour later, Defendant Bare agreed to contact Health Services. *Id.* at ¶ 25. Defendant

Bare informed Mitchell that Health Services was continuing to refuse to see Millard and that he

needed to sign up for sick call for the next day, Monday, February 7, 2011. *Id.* at ¶ 26. Defendant

Bare reported Millard's injury to Health Services, followed the instructions of Health Services,

and provided Millard with ice. Further, Millard does not allege that either Defendants Mitchell or

Bare had medical training that would indicate their actions constitute an "abuse." *See Sterling*,

290 Or. at 620.

Both Defendants Smith and Roberts, the registered nurses on call at Health Services

during the relevant time period, similarly failed to commit any abuse against Millard. Millard

alleges that Defendants Smith and Roberts were deliberately indifferent because they failed

immediately to examine Millard's thumb on Saturday, February 5, 2011 and, instead, instructed

Millard to report to sick call on Monday, February 7, 2011. Millard Decl., Dkt. 84 at ¶ 61. Based

on the information provided to Health Services, Defendants Smith and Roberts initially determined that Millard would not require immediate medical attention. Mitchell Decl., Dkt. 63 at 2. After Millard's thumb began to swell and discolor, Health Services prescribed ice. *Id.*; Millard Decl., Dkt. 84 at ¶¶ 15-26. Based on the injury observed by Defendants Mitchell and Bare, and relayed to Health Services, Defendants Smith and Roberts determined that Mitchell's injury could be treated with ice until sick call on Monday, February 7, 2011. Officer Carter observed Millard's hand later in the day on February 6, 2011 and determined that Health Services should in fact look at Millard's thumb. *Id.* at ¶¶ 27-31. Officer Carter's opinion, however, arose hours after the initial injury that Millard concedes worsened. Thus, this fact alone does not create a genuine dispute about whether the named Defendants "abused" Millard. *See Sterling*, 290 Or. at 620. For these reasons, Millard fails to create a genuine dispute as to a material fact regarding his claims under Article I, section 13 of the Oregon Constitution.

## C. Oregon Statutory Claims

Millard's Ninth, Tenth, and Eleventh Claims for Relief allege violations of Oregon state law. In particular, Millard alleges in his Ninth Claim for Relief that Defendants Smith and Roberts in their individual capacities violated Or. Rev. Stat. § 163.205, which governs criminal mistreatment in the first degree. Pl.'s Compl., Dkt. 4 at 26. Millard alleges in his Tenth Claim for Relief that Defendants Smith and Roberts are liable in their individual capacities for violation of Or. Rev. Stat. § 421.105(2), which provides that "an inmate sentenced to imprisonment in the Department of Corrections institution is under the protection of the law and the inmate shall not be injured except as authorized by law." Millard alleges in his Eleventh Claim for Relief that Defendants Shelton and Gower are liable in their individual capacities for violations of Or. Rev. Stat. § 423.020(1)(d), which requires the ODC to provide "adequate food, clothing, health and medical care, sanitation and security for persons confined."

As noted above, to state a claim for individual liability under 42 U.S.C. § 1983, a Complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

Millard's claims under Oregon state law are insufficient. First, Millard has not stated a claim under 42 U.S.C. § 1983. Millard does not state in his complaint that the alleged actions of any of Defendants named in his Ninth through Eleventh Claims for Relief deprived him of a right secured by the U.S. Constitution or any federal law. *See Crowley v. Nev. ex rel. Nev. Sec'y of State*, 678 F.3d 730, 735-36 (9th Cir. 2012) (a violation of state law may not form the basis for a § 1983 action unless it causes the deprivation of a right protected by the Constitution); *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996) ("To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress.").

Second, liberally construing Millard's claims as a *pro se* plaintiff, Millard could be seeking damages for injuries he suffered as a result of the actions of Defendants employed by the ODC. Millard may have a claim under the Oregon Tort Claims Act ("OTCA"), Or. Rev. Stat. §§ 30.260-30.300, but such a claim could not be brought in federal court because the OTCA does not waive the State of Oregon's Eleventh Amendment immunity to suit in federal court. *Estate of Pond*, 322 F. Supp. 2d at 1165 ("The [OTCA] is a waiver of sovereign immunity but does not waive Eleventh Amendment immunity. Thus, suits by private parties against the state must be brought in state court."). As a result, the statutes cited and facts alleged by Millard do not create

a cognizable cause of action. Thus, the Court grants Defendants' motion for summary judgment on these claims.

**D.  Qualified Immunity**

The individually-named Defendants also argue that they are shielded from any wrongdoing in this case by qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). A court has discretion to decide which of these two prongs of the qualified-immunity test to tackle first. *Id.* Qualified immunity allows government officials to make reasonable but mistaken judgments about open legal questions and "protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 2085 (quotation marks and citation omitted).

If there is no violation of a constitutional right, there is no necessity for further inquiry. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As discussed above, Millard has not shown a genuine issue of material fact about whether Defendants violated a constitutional or federal statutory right. Accordingly, the individual-named Defendants are entitled to qualified immunity.

## CONCLUSION

The Court GRANTS Defendants' Motion for Summary Judgment (Dkt. 61).

**IT IS SO ORDERED**.

DATED this 3rd day of June, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge